Batallo, J.
The defendant (the bank) received from the plaintiffs, for collection, the certificate of deposit in cpiestion, *16 which purported to be signed by Opdyke & Co. Opdyke & Co. in fact paid to the bank the amount of the certificate on the 27th of March, 1872, by including it in the check drawn by them and delivered to the bank on that day, for the purpose of taking up the paper which the bank had, on the same day, cleared for Opdyke & Co. If this payment had been absolute, and made after an inspection of the certificate by Opdyke and Co., it is conceded that the rule in Price v. Neal (3 Burr., 1354) would have applied, and that, consequently, Opdyke & Co. would have had no right to call upon the bank to refund on subsequently discovering the certificate to be a forgery. The voluntary refunding by the bank to Opdyke & Co. of the money paid by them, would, under those circumstances, have been no' answer to the claim of the plaintiffs against the bank for the money collected. But the payment was not absolute, nor was it made after an inspection of the certificate. There was an agreement subsisting between the bank and Opdyke & Co., to the effect that the bank should take up each day, at the clearing-house, all commercial paper drawn upon Opdyke & Co. which should be presented there by the other banks belonging to the association of the clearing-house. That upon being notified by the bank of the amount of the paper so taken up, Opdyke & Co. should forthwith send a check for the amount so taken up, and thereupon receive the paper; and that if any portion of the paper so taken up should prove, upon inspection, not to be good, Opdyke & Co., upon sending back to the bank through which it came, before the close of bank hours on the same day, should be entitled to a credit for the amount.
This agreement did not in fact apply to the certificate in question, it not being commercial paper drawn upon Opdyke & Co., presented at the clearing-house by a bank other than the defendant, and not having been presented at the.clearinghouse at all. But the payment to the bank, defendant, was made by Opdyke and Co. upon the faith of a statement sent to Opdyke & Co.'by the bank, and purporting to be sent in the course of the business done under such agreement, and *17 Opdyke & Co. had a right to assume that it was a statement of the aggregate amount of the clearances of the day, and that they would be entitled to a subsequent inspection of the paper. Moreover, the statement disclosed only the total amount claimed by the bank. It does not appear to have contained a detailed description of the paper, and the payment was in fact made without a previous inspection of the paper. The payment of the certificate, under these circumstances, did not of itself preclude Opdyke & Co. from reclaiming, on the certificate being subsequently discovered to have been forged. (Goddard v. Merchants’ Bank, 4 Comst, 147.)
It, is claimed, however, that Opdyke & Co., by their subsequent action, rendered the payment absolute, and precluded themselves from recalling it, and this is the point upon which the case depends.
The payment was made on the 27th of March, 1872, before noon, and the paper included in the statement upon which Opdyke & Co. gave their check was thereupon delivered to them. On its arrival at their office, the certificate in question was examined by their cashier, who passed it to their bookkeeper, together with the other paper received from the bank on that day. The cashier testified that his treatment of it was not conclusive, but was subject to correction if the bookkeeper should discover any thing wrong. Between half-past five and six o’clock p. m. of the same day it was found by the book-keeper, from an examination of the book of certificates of deposit, that Opdyke & Co. had never issued any such certificate of deposit, and thus it was discovered that this certificate was wholly forged, both body and signature. Opdyke & Co. immediately, on the same afternoon, gave notice of the forgery to the plaintiffs, and also telegraphed notice thereof to the Capital City Bank of Des Moines, Iowa, the principal of the plaintiffs, from whom they had received the certificate for collection.
When notice of the forgery was thus given to the plaintiffs they had not yet advised their principal even of the receipt of the certificate for collection. They had prepared and *18 were about sending to the Capital City Bank, by the mail of that evening, their letter of acknowledgment of the receipt of the certificate, when they were notified by Opdyke & Co. of the forgery. They thereupon added, at the bottom of their letter, a statement that Opdyke & Co. had notified them that the certificate was a forgery.
On the following day, the twenty-eighth of March, Opdyke & Co. returned the forged certificate, with an affidavit that it was forged, to the bank defendant, who thereupon credited back the amount to Opdyke & Co. and “charged it to the plaintiffs to whom they had previously given credit for the amount of the. certificate, it being the usage of banks to credit their depositors with all checks, drafts and certificates of deposit deposited with them, but such credit being subject to a counter-charge if the paper so deposited proves to be not good, and is returned to the party depositing it in compliance with the usage' of banks in respect to time and manner of return in such cases.
On the same day, March twenty-eighth, the bank tendered the forged certificate to the plaintiffs, who refused to receive it and denied the right of the bank to charge it to their account.
There is no evidence in the case as to the usage of banks in respect to the time or manner of return in such cases.
The certificate of deposit on being deposited with the defendant, was indorsed by the plaintiffs in conformity with usage.
The plaintiffs now claim that Opdyke & Co., by failing to discover the forgery and return the certificate to the bank during business hours of the twenty-seventh, rendered their previous conditional payment absolute, and precluded themselves from making reclamation, and in support of this position they adduce the agreement between Opdyke & Co. and the bank, in relation to clearances. •
As has been already shown, the transaction now under consideration did not fall within the provisions of that agreement. The certificate was not taken up at the clearing-house, neither did it come through any other bank, nor did the *19 reason exist which would have existed in such a case for requiring that it be returned the same day to the bank through which it came. That stipulation had reference to the liability which the defendant might incur under the rules of the clearing-house to the bank through which the paper came, if not returned the same day. Here the defendant itself held the paper for collection, and, in the absence of proof of any agreement or usage requiring a return of the paper on the same day in such a case, general principles of law must govern.
In case of commercial paper being paid without previous inspection, it is, no doubt, the duty of the party paying to use due diligence in making the inspection as soon as he has the opportunity, and in giving notice of the forgery if one he discovered; and if by his failure to do so the party receiving is prejudiced, such negligence would be a good answer to the claim for restitution. The doctrine of Price v. Neal (3 Burr., 1354), is exceptional, and in strictness applies only where the paper is actually presented to the party, and accepted or paid on or after such presentation. Where the payment is made 'without presentation, and accepted subject to future examination of the paper, the case is not within the exception in Price v. Neal, and the ordinary rules respecting money paid by mistake and negligence and its consequences should he applied. (Goddard v. Merchants' Bank, 4 Comst., 149.) We have heretofore expressed our disinclination to extend by analogy the decisions in Price v. Neal, and those which have followed it, to other cases arising upon different facts. (Nat. Bank of Commerce v. Nat. Mechanics' Banking Ass. [note], 55 N.Y., 211.)
In the present case it is clearly shown that Messrs. Opdyke & Co., immediately on discovering the forgery, used the utmdst diligence to notify the parties interested. The discovery was not made until after the doge of banking hours, and they conséquently gave notice to the plaintiffs and their principals, and as soon as practicable returned the. paper to the hank. The same letter which conveyed to the Capital City Bank of Des Moines notice that the certificate had been *20 received by their agents, the plaintiffs, for collection, conveyed the intelligence that the certificate was pronounced by the supposed makers to be a forgery. It does not appear that the Capital City Bank could have been misled or injured in any way by the failure to return the certificate to the defendant before three o’clock. Notice of the forgery was sent to it by the mail of the evening of the same day, and also telegraphed to it. It was the only party who appears to have had any actual interest in the matter. The plaintiffs do not pretend that they paid over the proceeds of the certificate on the supposition that it had been paid by Opdyke & Co., or that they have sustained any injury. If is difficult to conceive how any person was injured by the delay until half-past five p. m. in discovering the forgery. Even if that delay should be held to be laches, which would have precluded Opdyke & Co. from recalling their payment if it had prejudiced the party receiving, yet no injury having in fact resulted from such payment, and the position of the other parties not having been thereby changed, it would be unreasonable to hold Opdyke & Co. to their conditional payment of the forged paper, and compel them to assume the loss which had been incurred by the party originally deceived by it. We therefore think that under the circumstances Opdyke & Co. were entitled to repayment, and could have compelled it, and that the defendants were therefore justified in refunding the money paid them by mistake.
The claim that the passing over by the cashier of Opdyke & Co. to their book-keeper of the forged certificate, together with the other paper received from the bank on that day, amounted to such a recognition of the genuineness of the certificate as to preclude Opdyke & Co. from setting up the forgery when discovered, is, we think, untenable. It does not even appear that the" cashier decided as to the genuineness of the certificate, or whether it was his duty or that of the bookkeeper to pass upon the goodness of paper received through' the clearing-house or from the defendant. What was done between the cashier and book-keeper was inside the office of Opdyke & Co., and was not communicated either to plaintiffs *21 or defendants. No express recognition of the certificate was shown.
The order granting a new trial should be affirmed, and judgment absolute rendered against the plaintiffs pursuant to their stipulation.
All concur.
Order affirmed and judgment accordingly.